627 So.2d 781 (1993)
STATE of Louisiana, Appellee,
v.
Robert BRADFORD, Appellant.
No. 25,489-KA.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1993.
*782 L. David Cromwell, Shreveport, for appellant.
Paul Carmouche, Dist. Atty., Rebecca Bush, Asst. Dist. Atty., Shreveport, for appellee.
Before SEXTON, BROWN and STEWART, JJ.
BROWN, Judge.
Indicted with two counts of aggravated rape, defendant, Robert Bradford, was subject to two life imprisonment sentences. Thereafter, he reached an agreement with the state to plead guilty to reduced charges of forcible rape and receive concurrent sentences of 26 years. Bradford now seeks to set aside his guilty plea and sentences. Finding no merit to his claims, we affirm.

FACTUAL BACKGROUND
Defendant was with Birdette Barker and James Ray Evans on September 10, 1991. They met 18-year-old Angela Little and her 12-year-old sister on the street. The group went to Birdette Barker's house on Nena Street in Shreveport. At the house, defendant had sex with Angela Little. During this time, Little's 12-year-old sister was forced to use crack cocaine in a separate room. The 12-year-old was then taken to a bedroom where she was twice raped by defendant and forced to perform oral sex.[1]
Prior to trial, defendant's counsel negotiated an agreement that allowed defendant to plead guilty to reduced charges with a sentence of 26 years at hard labor. The first two years of the sentence were to be served without the benefit of parole, probation or suspension of sentence. On appeal defendant asserts three deficiencies in the guilty plea record. He also contends that his sentence was excessive.

GUILTY PLEA
Defendant claims his guilty plea must be set aside because of the following errors in the record:
(1) The trial court failed to apprise him of the maximum penalty to which he could be exposed upon his guilty plea to forcible rape;
(2) The trial court failed to advise that at least two years of his sentence were without benefit of parole, probation or suspension of sentence; and,
(3) The trial court failed to advise him that he had the right to remain silent "at trial."
A plea of guilty is more than a confession, it is itself a conviction, supplying both the evidence and verdict. All that remains is judgment and punishment. Like a confession, the plea of guilty is acceptable only when based on a reliable determination by a trial court that an accused knows and voluntarily waives his constitutional rights. On review, the voluntariness of a guilty plea cannot be presumed, but must be shown from the record of the proceedings. Thus, the prosecutor must establish, on the face of the record, that an accused was advised of his constitutionally guaranteed rights which he then affirmatively waived. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
The Boykin decision sets forth the specific federal constitutional rights which must be explained and waived when a guilty plea is entered in state criminal proceedings. "First, is the privilege against compulsory self-incrimination.... Second, is the right to trial by jury.... Third, is the right to confront one's accusers." Boykin, 395 U.S. at 243, 89 S.Ct. at 1712, 23 L.Ed.2d at 279.
The scope of Boykin has not been expanded to require the specific enumeration to defendant of rights other than the trilogy listed. In State v. Nuccio, 454 So.2d 93, 104 (La.1984), our supreme court stated:

*783 Boykin, furthermore, only requires that a defendant be informed of the three rights enumerated above. Its scope has not been expanded to include advising defendant of any other rights which he may have, nor of the possible consequences of his actions. Our jurisprudence has never required that a defendant be informed that his guilty pleahis convictionmay be used as a basis for filing of a future multiple offender bill. For the most part, our application of Boykin has been with few exceptions or expansions.
When the record establishes that an accused was informed of and waived his right to trial by jury, to confront his accusers and against self-incrimination, then the burden shifts to the accused to prove that despite this record his guilty plea was involuntary. See State ex. rel. LaFleur v. Donnelly, 416 So.2d 82 (La.1982).
Boykin does not set forth a magic word formula, but simply rejects any presumption of the validity of a guilty plea unless the transcript demonstrates that an accused was informed of his basic rights which he then affirmatively waived. McChesney v. Henderson, 482 F.2d 1101 (5th Cir.1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974). The three-right articulation rule was not designed to serve as a technical trap for conscientious trial judges who conduct a thorough inquiry into the validity of the plea. State v. Bowick, 403 So.2d 673, 675 (La.1981).
Defendant's first three assignments of error assert "prophylactic" deficiencies in his Boykin examination rather than the specific involuntariness of his guilty plea. Thus, we discuss separately each of his claims.

1. Maximum Penalty Exposure
The record establishes that Bradford was in court with his attorney and participated in the discussion surrounding his guilty plea. At the beginning of the Boykin (guilty plea) hearing, the assistant district attorney read specific details of the plea agreement into the record:
... Your Honor, at this time we would like to orally amend the indictment for two counts of aggravated rape to reflect the responsive charge on each count of forcible rape, with the understanding that the defendant will plead guilty as charged to the amended bill charging two counts of forcible rape.
If his guilty plea is accepted, he will receive an agreed-upon sentence of twenty-six years at hard labor with two years to be served without benefit of probation, parole, or suspension of sentence on each count. These sentences are to run concurrently... no multiple bill will be filed and the state will enter a nol pros on a pending charge of battery on a police officer and resisting an officer ...
The trial court then pursued with Bradford his understanding of the prosecutor's statement:
THE COURT: Mr. Bradford, have you had a chance to talk to your lawyer about this?
THE DEFENDANT: Yes.
THE COURT: Is this what you want to do?
THE DEFENDANT: Yes ...
THE COURT: Do you understand what your sentence is going to be?
THE DEFENDANT: Yes, I understand.
Thereafter, the court continued its discussion with Bradford:
THE COURT: ... [forcible rape] carries a lesser penalty than aggravated rape. Do you understand that?
THE DEFENDANT: Yes, sir.
THE COURT: And do you understand the nature of the charge?
THE DEFENDANT: Yes, I understand.
THE COURT: And do you understand what the proceedings are about?
THE DEFENDANT: Yes, sir.
The terms and details of the plea bargain were thoroughly explained in court before defendant entered his guilty plea. As originally indicted by the grand jury, if convicted, defendant could only have been sentenced to life terms. Defendant knew exactly what his sentence would be if he chose to plead to the lesser charges. To require the trial court to specifically set out the possible *784 sentencing range under these circumstances would be superfluous.
In State v. Medine, 623 So.2d 110, 113 (La.App. 1st Cir.1993), the court recognized that:
The language included in many Louisiana cases concerning a requirement that the accused be advised of his possible sentencing exposure citing Boykin, apparently derives from footnote 7 in Boykin, in which the Supreme Court quotes from a Pennsylvania state court case as a demonstration of that court's approach to the issue. The Boykin decision itself does not require such advice; it only requires that a defendant be informed of the three rights enumerated above [right against self-incrimination, to jury trial, and of confrontation]
. . .
... [Defendant] ... argues that the guilty plea is invalid because the trial court did not advise him of the sentencing range. As previously noted, Boykin requires no such advice. Moreover, it is not clear what, if any, explanation is owed to a defendant about his maximum penalty exposure, only that an understanding of the exposure is important to a defendant in some cases.
In State v. Harris, 601 So.2d 779, 782 (La.App. 1st Cir.1991), the court noted that:
The Boykin decision itself does not require such advice; it only requires that a defendant be informed of the three rights enumerated above [right against self-incrimination, to jury trial, and of confrontation]. `Its scope has not been expanded to include advising the defendant of any other rights which he may have, nor of the possible consequences of his actions.' State v. Nuccio, 454 So.2d 93, 104 (La.1984).
Defendant argues that the guilty plea is invalid because the trial judge did not advise him of the sentencing range. As previously noted, Boykin requires no such advice. Moreover, it is not clear what, if any, explanation is owed to a defendant about his maximum penalty exposure, only that an understanding of the exposure is important to a defendant in some cases. State v. Haney, 434 So.2d 1264, 1266 n. 3 (La.App. 1st Cir.1983).
See contrary decision, State v. Carter, 619 So.2d 82 (La.App. 2d Cir.1993) (Brown, J., dissenting).
In the case sub judice, defendant does not assert his ignorance of the sentencing range or that his plea was, in fact, affected by the lack of such knowledge. Instead, he insists that Boykin imposed on the trial court the impotent requirement to narrate that forcible rape carries the possible sentence of not less than five nor more than forty years. The record supports the legitimacy of Bradford's guilty plea.

2. Parole, Probation or Suspension of Sentence
The assistant district attorney stated at the start of the guilty plea proceedings that Bradford's sentence would include two years without parole, probation or suspension.
At the end of the hearing, the trial judge stated:
[THE COURT] Let me say that again for the record. Mr. Bradford is being sentenced to twenty-six years at hard labor without benefit of probation, parole, or suspension of sentence as to the first two yearsthat's as to each countand each sentence is to run concurrent. This is pursuant to a negotiated agreement of sentence by Mr. Bradford and Ms. Bush on behalf of the District Attorney's office with the assistance of counsel.
This record reveals that the defendant was in fact informed that the first two years of his sentence would be without benefit of parole, probation or suspension of sentence by both the assistant district attorney and the judge. However, State v. Whitaker, 543 So.2d 1073, 1076 (La.App. 2d Cir.1989), held that the failure to advise a defendant that the sentence will be imposed without benefit of parole, probation or suspension of sentence does not render a plea invalid. In State v. Henderson, 520 So.2d 1028, 1029 (La.App. 3d Cir.1987), the failure to inform a defendant pleading guilty to armed robbery that the penalty provided by statute would be without benefit of parole, probation or suspension of sentence did not render the *785 plea invalid. Accordingly, we find this assignment meritless.

3. Right to Remain Silent
Defendant's final contention is that he was inadequately advised under Boykin that his right and privilege against self-incrimination applied to the trial as well as the Boykin hearing.
The record reveals the following colloquy:
THE COURT: "Do you understand you have the right to remain silent and not give any testimony against yourself, but by entering a guilty plea that you are waiving these rights." (Emphasis added).
THE DEFENDANT: Yes, sir.
THE COURT: More importantly, do you understand that you have a right to have a trial by a jury of your peers, but by entering the guilty plea you are giving up that right to have a trial before a jury.
THE DEFENDANT: Yes, sir.
THE COURT: Do you understand that if you had a trial, that you would have the right along with your lawyer, the right to cross-examine any witnesses who testified against you or to call your own witness at trial, but by entering a guilty plea you are giving up those rights?
The defendant argues that although advised that he was waiving his right to cross-examine witnesses at trial and his right to a trial, the court did not specifically apprise him that "at trial" he could not be forced to testify against himself.
The word "testimony" is a specific reference commonly understood to pertain to evidence given at a trial. The colloquy reveals that defendant was aware of the right he was waiving. The trial court's failure to expressly advise defendant that his right to remain silent applied to the trial as well as to the plea should not be fatal to his plea. See State v. Bowick, 403 So.2d 673, 674-675 (La. 1981), finding no error in failing to explain that the privilege against self-incrimination applied not only to the guilty plea, but also at trial. See also State v. Ross, 542 So.2d 631, 633 (La.App. 5th Cir.1989).
This assignment is also without merit.

EXCESSIVE SENTENCE
The defendant's final assignment of error is that the trial court erred in imposing an excessive sentence. Although the "Motion to Reconsider Sentence" was a personal letter to the trial judge, it was treated as a formal motion.
Defendant was confronted with the possibility of two life terms. His attorney obtained an agreement to a sentence of 26 years.
The defendant entered his plea of guilty and was sentenced in accordance with his agreement. The defendant cannot appeal or seek review of a sentence to which he agreed. LSA-C.Cr.P. Art. 894.1; State v. Bell, 412 So.2d 1335, 1336 (La.1982); State v. Wiley, 597 So.2d 167, 168 (La.App. 2d Cir. 1992).
Accordingly, this assignment is without merit.

CONCLUSION
For the above reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.
SEXTON, J., concurs.
NOTES
[1] The others also face charges stemming from this incident.